UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Brandon Gibson,**  *Plaintiff*,  v.  **ITMedia Solutions, LLC,**  *Defendant*. | Case Number: 8:20-cv-2601  Ad Damnum: $6,000 + Atty Fees & Costs  JURY TRIAL DEMANDED |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Brandon Gibson** ("**Mr. Gibson**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **ITMedia Solutions, LLC** ("**ITMedia**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Gibson against ITMedia for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. §1681p, and 28 U.S.C. §1331.

3. ITMedia is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to 28 U.S.C. §1331.

4. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendant therein.

## PARTIES

5. **Mr. Gibson** is a natural person residing in Eagle Lake, Polk County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. **ITMedia** is a California limited liability company with a primary business address of **2800 Olympic Blvd., Suite 100, Santa Monica, CA 90404.**

7. ITMedia's Florida Registered Agent is **Paracorp Incorporated, 155 Office Plaza Drive, 1st Floor, Tallahassee, FL 32301.**

## FACTUAL ALLEGATIONS

### ITMedia Owns and Controls PersonalLoans.com

8. ITMedia is the "official AOR (agency of record) for the web properties: Cashadvance.com, BadCreditLoans.com and Personalloans.com." **SEE PLAINTIFF'S EXHIBIT A.**

9. Jason Ramin ("**Ramin**") is the chief executive officer at ITMedia. Ramin is also the author of multiple articles published on PersonalLoans.com's blog, most of which tout the purported advantages to consumers of taking out online payday loans.

10. In 2009, Daniel Negari ("**Negari**") incorporated Cash Now, Inc., a California-based payday lender. **SEE PLAINTIFF'S EXHIBIT B.**

11. On December 8, 2014, Cash Now, Inc., merged with ITMedia. **SEE PLAINTIFF'S EXHIBIT C.**

12. As a result of that merger, Negari controls ITMedia.

13. PersonalLoans.com is a website that advertises "easy," short-term loans to consumers. The website is not a direct lender; it is a lead generator which collects consumers' personal information – *e.g.*, name, address, date of birth, Social Security number, employer, bank account, and related information – for the purposes of selling this information to online payday lenders.

14. PersonalLoans.com claims its affiliated lenders make loans at annual interest rates between 5.99% and 35.99% annually. Its webpage provides examples of the *annual percentage rates* ("**APRs**") charged by its affiliates, ranging from 12% to 24% annually. **SEE PLAINTIFF'S EXHIBIT D.**

15. Despite these clear representations to consumers visiting its website, PersonalLoans.com sells the consumer data it harvests to a wide variety of lenders – many of which make loans at interest rates exceeding 750% annually. One such lender who buys leads from PersonalLoans.com is Sky Trail Cash, which makes consumer loans at 782% interest. A $500 loan results in a $1,254.74 repayment obligation in less than four months. **SEE PLAINTIFF'S EXHIBIT E.**

### Rent-A-Tribe Schemes

16. PersonalLoans.com sells many of its leads to non-tribal payday lenders who claim sham affiliations with Native American tribes in what is frequently referred to as "rent-a-tribe" schemes.

17. In these schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for the illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe. In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

18. Sky Trail Cash – one of many "tribal" lenders who buys consumer data from PersonalLoans.com – claims to be owned by the tribal lending entity Ningodwaaswi, LLC, which, in turn, claims to be owned by the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "**LDF Tribe**") in Wisconsin.

19. The LDF Tribe is one of the most prolific purveyors in the rental market for sovereign immunity, claiming to operate more than 50 online payday lending websites. Despite supposedly owning a multitude of payday loan websites, transacting tens of millions of dollars in total revenues per month – a feat which would require thousands of employees in aggregate – each and every lending website supposedly controlled by the LDF Tribe states its business office to be at the same location: the second floor of a cigarette store in rural Wisconsin.

20. In reality, Sky Trail Cash is beneficially owned by Texas payday loan magnate William C. "Cheney" Pruett ("**Pruett**"), who has dozens of companies registered

with the Texas Secretary of State and has owned and operated many payday lenders, both online and storefront. As aforementioned, Sky Trail Cash makes loans at interest rates that vastly exceed the maximum legal limit in Florida.

21. Oxford Financial Services ("**Oxford**") is another purported "tribal" lender that buys consumer data from PersonalLoans.com. Oxford claims to be owned by Kashia Services, which, in turn, claims to be owned and controlled by the Kashia Band of Pomo Indians of the Stewart's Point Rancheria (the "**Kashia Tribe**").

22. The Kashia Tribe has approximately 78 enrolled members and a small reservation in rural northern Sonoma County, California. The true beneficial owners of Oxford is All Calls, LLC, a non-tribal company located in Salt Lake City, Utah. Oxford lends to consumers at interest rates of 700% annually and greater.

23. By regularly and frequently promoting and assisting lenders like Sky Trail Cash and Oxford to make loans in Florida – lenders who are not licensed in Florida and who make loans at rates more than 20 times the maximum lawful rate – ITMedia, operating PersonalLoans.com, is violating the *Racketeering Influenced and Corrupt Organizations Act* ("**RICO Act**"), 18 U.S.C. § 1964, *et seq*.

24. Indeed, Negari, an entrepreneur who is no stranger to questionable, deceptive, and often fraudulent business tactics, arranged for PersonalLoans.com itself to *appear* to be shielded from state and federal law under the fiction that the website is owned by a Native American tribe.

25. PersonalLoans.com claims to be owned by Arrow Eagle, LLC ("**Arrow Eagle**") of Roosevelt, Utah. Arrow Eagle, in turn, claims to be owned by the Ute Tribe of Utah (the "**Ute Tribe**"), a federally recognized Indian Tribe.

26. Of course, for all real intents and purposes, PersonalLoans.com is owned and operated by Negari and his non-tribal partners and investors who control its operation. PersonalLoans.com is operated, funded, and staffed by Negari and ITMedia, and operates from ITMedia's offices in Los Angeles County. The Ute Tribe has virtually zero involvement in the operation of the website, and the tribe's sole contribution is to provide a veneer of sovereign immunity for Negari, *et al*.

27. Yet, even a cursory examination of available evidence reveals the transparent connection from Negari and ITMedia to PersonalLoans.com. For example, records from March 2017 show Experian recording inquiries relating to PersonalLoans.com which contained the following identification: "2800 OLYMPIC BLVD STE 100 SANTA MONICA CA 90404 *No phone number available*." **SEE PLAINTIFF'S EXHIBIT F.** This address belongs to ITMedia and is also utilized by other entities owned and operated by Negari.

28. In sum, while the Ute Tribe claims ownership of PersonalLoans.com, its involvement in the website is superficial. In exchange for the rental of its name, the Ute Tribe receives around 1% of revenues generated by the website.

<u>**Usurious Lending Prohibited in Florida**</u>

29. Section 687.071(3), Florida Statutes, renders the issuing of loans with annual interest rates greater than 45% a third-degree felony.

30. Section 687.071(7), Florida Statutes, renders any such usurious loan unenforceable in Florida, stating: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."

31. Thus, any person who willfully makes such a loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935). *See also Rollins v. Odom*, 519 So. 2d 652, 655 (Fla. Dist. Ct. App. 1988). *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

32. Attempting to circumvent state interest rate caps by fraudulently asserting tribal sovereign immunity has been found to constitute criminal conduct. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y).

## **Negari's History of Questionable Business Practices**

33. Negari is a businessman living in Nevada who has a long and checkered history in the marketplace for lead generation and payday lending.

34. Negari, through his many companies and subsidiaries, frequently engages in questionable – and often illegal – business practices. As but one example, the **Federal Trade Commission** ("**FTC**") and the **Small Business Administration** ("**SBA**") sent a "WARNING LETTER" to ITMedia on May 14, 2020, expressing concern that ITMedia's website, SBA.com – which is intentionally similar to the SBA's actual website, SBA.gov – was receiving commissions and making profit from referrals to lenders who supposedly

could process Paycheck Protection Program ("PPP") loans for small businesses. **SEE PLAINTIFF'S EXHIBIT G.**

35. Negari, through ITMedia, also operates websites like debtsolutions.com, which harvests consumer information from consumers interested in "debt consolidation" and "debt reduction." Debtsolutions.com creates the distinct impression that the website is devoted to helping consumers find legitimate ways to better manage their debt, similar to non-profit consumer credit counseling services. However, when consumers provide their personal information to debtsolutions.com under this guise, Negari and ITMedia sell the consumers' data as leads to predatory, for-profit "debt settlement" entities. These companies often charge illegal, up-front fees to provide "debt settlement" services and almost always fail to provide the advertised results. Many consumers end up being sued by their creditors for non-payment of debts supposedly being "renegotiated" by the debt settlement entities, ending up in far worse positions then they originally found themselves.

36. In 2016, the FTC filed an enforcement action in the Central District of California against ITMedia regarding its failure to respond to the FTC's investigative demands. The FTC was investigating ITMedia for what it believed was questionable methods in obtaining leads regarding consumers seeking online payday loans. The FTC also demanded information as to whom ITMedia sells leads. *Federal Trade Commission vs. IT Media Inc.*, case 2:16-cv-09483-CAS-MRW, Central District of California, Western Division, Dec. 22, 2016.

**PersonalLoans.com Business Model**

37. PersonalLoans.com *purchases* potential customer leads and obtains supplemental information from CRAs like Experian, re-selling that information to online payday lenders and similar.

38. In most instances, PersonalLoans.com does not have consent from the consumer to obtain a credit report, as it simply purchases the consumer's basic personal information – name, address, date of birth, banking information, etc. – from other online lead sources.

39. Despite a lack of permissible purpose, ITMedia frequently obtains credit reports regarding consumers.

**PersonalLoans.com Requests CBR Regarding Mr. Gibson**

40. On or about November 28, 2018, ITMedia, under the guise of PersonalLoans.com, requested a *Credit Bureau Report* ("**CBR**") regarding Mr. Gibson from Experian. A record of the inquiry was logged by Experian. **SEE PLAINTIFF'S EXHIBIT H.**

41. The FCRA, 15 U.S.C. 1681a(d)(1), defines a *Consumer Report* as "**any** written, oral, or other communication of **any** information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living…" (**Emphasis added**.)

42. The information contained in the CBR regarding Mr. Gibson, including his employment and classification of residence, bear on his mode of living and credit worthiness.

43. The CBR that ITMedia obtained from Experian regarding Mr. Gibson is therefore a *Consumer Report* as defined by the FCRA, 15 U.S.C. § 1681a(d)(1).

44. When requesting the report, ITMedia claimed that the requesting party was "PERSONALLOANS.COM, 318 N CARSON ST SUITE 208, CARSON CITY, NV 89701, phone 310-929-5566." *Id.*

45. The phone number 310-929-5566 was formerly utilized by the Negari-owned Cash Now, Inc., prior to its discontinuation in 2014. The Carson City, Nevada, address belongs to Paracorp Incorporated ("**Paracorp**"). No actual consumer lending business is conducted at this address and Paracorp is simply a professional registered agent, serving more than 1,000 businesses in Nevada.

### PersonalLoans.com Claimed its Permissible Purpose was 'Account Review'

46. The FCRA, 15 U.S.C. § 1681b(f), requires that a prospective user of a consumer report, such as PersonalLoans.com, *certify* its permissible purpose for obtaining the report.

47. When PersonalLoans.com asked Experian for a copy of Mr. Gibson's CBR, it certified its permissible purpose for account review.

48. However, Mr. Gibson had no account with PersonalLoans.com for which it could "review" his credit. Indeed, pursuant to PersonalLoans.com's website, it does not make loans and is not a lender.

49. PersonalLoans.com used the information obtained from Experian for specific purposes: to obtain private, detailed information about Mr. Gibson and then re-sell

that information to various online loan sharks, virtually all of whom were operating illegally in Florida.

50. PersonalLoans.com, and thus ITMedia, never certified its permissible purpose was for marketing purposes and re-sale to undisclosed third parties.

51. Further, even assuming, *arguendo*, that Mr. Gibson had, somehow, "consented" to ITMedia obtaining a credit report, Mr. Gibson could only have consented if ITMedia had the capacity to issue a legal loan.

52. By conspiring with illegal lenders, enabling and assisting them with their illegal loans in Florida, ITMedia engaged in a pattern of racketeering rendered illegal by the RICO Act; thus, any permission that ITMedia obtained under the false pretenses that they could facilitate lending him money after pulling his credit was null *ab initio*.

53. Additionally, ITMedia certified to Experian that it was requesting Mr. Gibson's CBR for its own use, *e.g.*, ITMedia was the end-user and was not acting as a re-seller of reports.

54. Logically, ITMedia could not possibly have been requesting the CBRs for its own purposes as, pursuant to PersonalLoans.com's own disclosures, it engages in no direct lending. Thus, the only possible reason it would have obtained Mr. Gibson's CBR was to re-sell such information about Mr. Gibson, which it merged with data it obtained on its own, such as Mr. Gibson's salary information.

55. ITMedia was, and still is, acting as a *Reseller of Reports* from CRAs within the meaning of 15 U.S.C. § 1681a(u) in that: (a) for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole, or in part, in the practice of assembling and

merging consumer information contained in the database of another consumer reporting agency for purposes of furnishing such information to a third party; and, (b) it does not maintain a database of the assembled or merged information from which new consumer reports are produced.

56. Since ITMedia was a reseller of credit reports, it was required by 15 U.S.C. §§ 1681e(e)(1)(A) and 1681e(e)(2)(A)(i) to disclose who the end users of the report were to Experian, the CRA from which Mr. Gibson's report was obtained. ITMedia made no such disclosure and provided false certification to Experian that the report was for *its own use* and would not be used for any other purpose.

57. Within 48 hours of obtaining Mr. Gibson's Experian credit report, ITMedia re-sold the data contained within it, along with other information, to the online payday lenders Sky Trail Cash, Oxford Financial, Ubicash, 605Lend, and Axis Advance. Each one of these online payday lenders claims sham tribal affiliations and makes loans to consumers at interest rates between 600% and 850% annually.

58. Congress defined the invasion of one's privacy as an injury-in-fact, and courts have recognized statutory violations rooted in privacy invasions as a basis for suit. *See, e.g., Thomas v. FTS USA, LLC*, 193 F. Supp. 3d. 623, 637 (E.D. Va. 2016) (finding that plaintiff asserted standing under §§ 1681b(b)(2) and 1681b(b)(3)); *see also Gambles v. Sterling Infosystems. Inc.*, No. 15 CIV. 9746, 2017 WL.

59. Mr. Gibson has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA

60. Mr. Gibson incorporates paragraphs 1 – 59 as if fully stated herein.

61. ITMedia violated **15 U.S.C. § 1681b(f)** when it obtained Mr. Gibson's credit report from Experian without permissible purpose, as ITMedia, under the guise of PersonalLoans.com, stated it needed the CBR in connection with an "account review" regarding a "credit transaction," but no account existed. Mr. Gibson never applied for, much less obtained, any credit from PersonalLoans.com or any entity related to ITMedia, and Mr. Gibson never consented to ITMedia obtaining a credit report regarding him.

62. ITMedia used Mr. Gibson's confidential information obtained from Experian to try to discern Mr. Gibson's financial situation for the purpose of re-selling his information to various online payday loansharks, to assist them in making illegal and usurious loans to Mr. Gibson at interest rates that far exceed the maximum lawful rate in Florida.

63. ITMedia violated **15 U.S.C. § 1681b(f)** when it obtained Mr. Gibson's credit report and then used it for purposes other than those specified on at least **five separate occasions**, when it re-sold data contained in the reports to Sky Trail Cash, Oxford Financial, Ubicash, 605Lend, and Axis Advance.

64. ITMedia violated **15 U.S.C. §§ 1681e(e)(1)(A)** and **1681e(e)(2)(A)(i)** when it obtained Mr. Gibson's credit report from Experian and then re-sold data contained within the report to Sky Trail Cash, Oxford Financial, Ubicash, 605Lend, and Axis Advance. ITMedia never disclosed to Experian that it intended to act as a re-seller of credit reports nor did it disclose the end users of the report it obtained as required by this subsection.

ITMedia could not have possibly needed the information for its own purposes as it does not, pursuant to its website's own disclosures, engage in any direct lending.

65. As a result of its conduct, ITMedia is liable to Mr. Gibson pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Gibson respectfully requests this Court to enter judgment against ITMedia, and for him, as follows:

a. The greater of statutory damages of **$1,000.00** per incident (for a total of **$6,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Gibson's actual damages;

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Gibson hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **November 5, 2020** by:

**SERAPH LEGAL, P. A.**
*/s/ Bridget Lynn Dow, Esq.*
Bridget Lynn Dow, Esq.
Florida Bar # 10
BDow@SeraphLegal.com
*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar #118103
TBonan@SeraphLegal.Com
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
T: (813) 567-1230
F: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBITS LIST**

| | |
|---|---|
| A | Former ITMedia Employee's Description of the Company, LinkedIn Profile Excerpt |
| B | Articles of Incorporation for Cash Now, Inc. |
| C | Agreement of Merger Between Cash Now, Inc., and ITMedia |
| D | PersonalLoans.com, "Example of a Personal Loan APR Range" |
| E | Sky Trail Cash Sample Loan Information |
| F | PersonalLoans.com Experian Inquiry From 2017 |
| G | FTC Warning Letter to ITMedia, May 14, 2020 |
| H | Mr. Gibson's Experian Consumer Disclosure, August 27, 2019, Inquiries Excerpt |